UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVON DANTE HARRIS, JR., <br><br> Plaintiff, <br><br> v. <br><br> KERN COUNTY SHERIFFS, et al., <br><br> Defendants. | Case No.: 1:19-cv-0262 - LJO - JLT <br><br> FINDINGS AND RECOMMENDATIONS DENYING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING THE ACTION WITHOUT PREJUDICE FOR LACK OF JURISDICTION |

Devon Dante Harris, Jr. asserts the defendants— including several members of his family, the Kern County Sheriff's department, Facebook, and other individuals— have violated federal and state laws. In addition, Harris contends the defendants have violated his civil rights. (*See generally* Doc. 3) For the reason set forth below, the Court finds Plaintiff's sole claim arising under federal law is facially implausible. Accordingly, the Court recommends supplemental jurisdiction over any state law claims be declined and the First Amended Complaint be **DISMISSED** without prejudice.

**I.    Proceeding *in forma pauperis***

As a general rule, all parties instituting any civil action, suit or proceeding in a United States District Court must pay a filing fee. 28 U.S.C. § 1914(a). However, the Court may authorize the commencement of an action "without prepayment of fees and costs of security therefor, by a person who submits an affidavit that . . . the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). Therefore, an action may proceed despite a failure to prepay the filing fee only if

1

leave to proceed *in forma pauperis* is granted by the Court. *See Rodriguez v. Cook*, 169 F.3d 1178, 1177 (9th Cir. 1999).

The Ninth Circuit held that "permission to proceed in forma pauperis is itself a matter of privilege and not a right; denial of an in forma pauperis status does not violate the applicant's right to due process." *Franklin v. Murphy*, 745 F.2d 1221, 1231 (9th Cir. 1984) (citing *Weller v. Dickson*, 314 F.2d 598, 600 (9th Cir. 1963)). In addition, the Court has broad discretion to grant or deny a motion to proceed IFP. *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990); *Weller,* 314 F.2d at 600-01. In making a determination, the court "must be careful to avoid construing the statute so narrowly that a litigant is presented with a Hobson's choice between eschewing a potentially meritorious claim or foregoing life's plain necessities." *Temple v. Ellerthorpe*, 586 F.Supp. 848, 850 (D.R.I. 1984).

The Court recommends Plaintiff's application to proceed *in forma pauperis* be denied because, as discussed below, the complaint fails to state a meritorious claim upon which relief may be granted. *See, e.g., Minetti v. Port of Seattle*, 152 F.3d 1113, 1115 (9th Cir. 1998) ("A district court may deny leave to proceed in forma pauperis at the outset if it appears from the face of the proposed complaint that the action is frivolous or without merit"); *Tripati v. First Nat'l Bank & Trust*, 821 F.2d 1368, 1369 (9th Cir. 1987) (same).

**II.     Screening Requirement**

When an individual seeks to proceed *in forma pauperis*, the Court is required to review the complaint and shall dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

A plaintiff's claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In other words, a complaint is frivolous where the litigant sets "not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**III.    Pleading Standards**

The Federal Rules of Civil Procedure set forth the applicable standards for pleading complaints.

A pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). Further, a plaintiff must identify the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks and citations omitted). Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 566 U.S. at 678 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions in the pleading are not entitled to the same assumption of truth. *Id.* The Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

**IV.    Allegations**

Plaintiff reports he was released from federal prison in April 2015, after which he went to his parents' residence. (Doc. 3 at 3) He alleges that during his stay, he learned that his mother, defendant

Zelma Jackson, "had an insurance policy opened in his younger siblings (sic) name…, for accidental death just a few months prior to her death in an 'alleged' accidental car accident." (*Id.*) Plaintiff asserts that his sister and mother did not get along, and Plaintiff became "very suspicious." (*Id.*)

In June 2015, defendant Latoya Jackson (Plaintiff's cousin) and Zelma Jackson called Plaintiff's probation officer and informed him that Plaintiff was high on meth. (Doc. 3 at 3) The following day, Plaintiff "provided a positive sample for THC and meth." (*Id.*) Plaintiff asserts that the probation officer indicated the plaintiff "would be placed in a program for a few weeks," and Plaintiff agreed. (*Id.*) Plaintiff alleges that before he went to the program, "Latoya Jackson and Zelma Jackson set fire to Plaintiff's vehicle… while Plaintiff was out of town working and then called a 911 dispatcher claiming Plaintiff tried to commit suicide." (*Id.*) He alleges Latoya and Zelma "made other false calls," and eventually he "was sent back to prison." (*Id.* at 3-4)

Plaintiff asserts that upon his release in January 2018, he discovered that Zelma "had taken out an accidental life insurance policy in Plaintiff's name." (Doc. 3 at 4) He alleges that he confronted his mother about the insurance policy, and she responded, "I am not washing no damn cars to bury you when you die." (*Id.*) Plaintiff asserts that he then "knew his life was in danger." (*Id.*)

A few days later, "Plaintiff discovered his Facebook page was hacked and someone re-posted a negative HIV test [he] previously took, making the picture blurry so that it was unreadable, then posting that Plaintiff was positive for HIV." (Doc. 3 at 4) Plaintiff alleges he asked for it to be fixed by a friend, who "uncovered evidence that defendant Jenna Marie Speiahti had filed tax returns in Plaintiff's name and took out student loans in Plaintiff's name" with the assistance of Romien Harris, his brother. (*Id.*) He asserts that Ms. Speiahit was his ex-girlfriend, who became intimate with Plaintiff's brother. (*Id.*) According to Plaintiff, "defendants and all of them obtained a copy of …[his] California Drivers Licence (sic), Social Security Card, Birth Certificate, and other valuable personal information" to take out loans in his name, open bank accounts, and file state and federal tax returns. (*Id.* at 7)

Plaintiff contends this discovery and others made him "question all family members." (Doc. 3 at 4) Plaintiff alleges he was "black balled by all family members and lies after lies began to surface about Plaintiff on social media," where "Plaintiff was called a snitch, pedophile, alleged to be using

bath salt, and other defamatory names." (*Id.*)

At some unidentified times, Plaintiff alleges he "was held hostage" at three different homes in Bakersfield. (Doc. 3 at 6) He asserts he "made numerous calls to the authorities," seeking assistance from the Bakersfield Police Department and Kern County Sheriff's Department. (*Id.*) Plaintiff contends the sheriff deputies "failed to conduct an investigation" on Plaintiff's claims, "and instead chose to arrest Plaintiff, and place him in a mental [h]ealth [f]acility." (*Id.*) Specifically, Plaintiff asserts he was placed at the Mary K. Shell Center. (*Id.*)

**V.     Discussion and Analysis**

Based upon the foregoing allegations, Plaintiff identifies the following causes of action in his complaint: (1) intentional infliction of emotional distress, (2) "intentional infliction of cruel and unusual punishment," (3) identity theft, (4) conspiracy to commit murder, (5) "fabricating false police reports and 911 calls," (6) vandalizing others' property, (7) tax fraud, (8) defamation, and (9) insurance fraud. (*See* Doc. 3 at 5; *see also id.* at 6-10)

**A.     Section 1983 claims**

Plaintiff frames his complaint as one for a violation of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). (*See* Doc. 3 at 1) Pursuant to Section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To plead a Section 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) a constitutional right was deprived, and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff." *Chavira v. Ruth*, 2012 WL 1328636

5

at *2 (E.D. Cal. Apr. 17, 2012). An individual deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, "[s]ome culpable action or in action must be attributable to defendants." *Puckett v. Corcoran Prison - CDCR*, 2012 WL 1292573, at *2 (E.D. Cal. Apr. 13, 2012).

Based upon the allegations presented and the causes of action identified by Plaintiff, it appears the sole claim arising under Section 1983 in the First Amended Compliant is for cruel and unusual punishment. (*See generally* Doc. 3)

### 1. "Cruel and Unusual Punishment" Claim

As an initial matter, the Court notes Plaintiff was not a convicted prisoner at the time of the events supporting his claim for cruel and unusual punishment. (*See* Doc. 3 at 6) However, the Eighth Amendment's protection against cruel and unusual punishment applies only to convicted prisoners. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). As to pretrial detainees, it is the Fourteenth Amendment's Due Process Clause that protects them. *Graham*, 490 U.S. at 395 n. 10; *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002). On this basis, the Ninth Circuit determined the Fourth Amendment's standards set the applicable constitutional limitations for considering such claims. *Gibson*, 290 F.3d at 1197; *Short v. Sanzberro*, 2009 U.S. Dist. LEXIS 122519 at *8 (E.D. Cal. Dec. 18, 2009).

Nevertheless, the Court finds Plaintiff's claim is facially implausible against the Kern County Sheriff and the City of Bakersfield. Plaintiff reports he was placed at Mary K. Shell Center, which is a temporary housing facility for individuals experiencing behavioral and psychiatric emergencies.[1] For Plaintiff to have been taken involuntarily—as the facts imply—the officers or deputies must have followed procedures, and Plaintiff is unable to challenge the determination that such treatment was required. For this reason, the Court recommends the claim be **DISMISSED**.

///

---

[1] The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Accordingly, the Court takes judicial notice of the fact that Mary K. Shell Center is a short-term mental health facility in Bakersfield, California.

### 2. Claim against the Kern County Sheriff

Individual liability under Section 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979)). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor*, 880 F. 2d at 1045. There is no *respondeat superior* liability under Section 1983. *Taylor*, 880 F.2d at 1045 (citing *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir.1984)).

Plaintiff identifies the Kern County Sheriff as a defendant, asserting "the county sherriff (sic)… is being sued in [an] official and individual capacity." (Doc. 3 at 2) However, the facts alleged do not indicate the Kern County Sheriff was involved in the decision to place Plaintiff at the Mary K. Shell Center. Likewise, there are no facts indicating the sheriff directed the actions of deputies or failed to prevent a constitutional violation. Because there is no causal connection between the sheriff and the alleged constitutional violations, Plaintiff's claim as to this defendant fails, and the Court recommends the claim be **DISMISSED**.

### 3. Claim against the City of Bakersfield

It is unclear whether Plaintiff seeks to state claims against the City of Bakersfield in this action, as the City is identified as a defendant only in the caption of the complaint, and not discussed in the narrative portion of Plaintiff's First Amended Complaint. (*See generally* Doc. 3)

Significantly, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dep't. of Soc. Services*, 436 U.S. 658, 691 (1978). Thus, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Id.*, 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains through a governmental policy or custom. *Id.* at 694; *Gibson*, 290 F.3d at 1185.

To establish municipal liability, Plaintiff must allege (1) he was deprived of a constitutional right; (2) the City of Bakersfield had a policy; (3) that this policy amounted to deliberate indifference to

his constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Monell*, 436 U.S. at 690-92. A policy or custom of a government may be established when:

> (1) A longstanding practice or custom...constitutes the standard operating procedure of the local government entity;
>
> (2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or
>
> (3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum v. Fresno Police Dep't*, 2011 WL 350155 at *3 (E.D. Cal. Feb. 2, 2011) (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). Further, a governmental policy may be inferred where there is evidence of repeated constitutional violations for which the officers were not reprimanded. *Menotti*, 409 F.3d at 1147.

A policy amounts to deliberate indifference when "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (quotation omitted, citing *Oviatt*, 954 F.2d at 1477-78; *accord. Canton*, 489 U.S. at 390). To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson*, 290 F.3d at 1186 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). Plaintiff has not identified any custom or policy of the City or alleged the City had notice of any potential harm caused by its polices.

Thus, for municipal liability to be imposed, the complaint must allege sufficient facts to demonstrate that an unconstitutional custom caused Crawford harm. A custom is "a widespread practice that . . . is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation mark omitted). Consequently, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has

become a traditional method of carrying out that policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

On the other hand, Plaintiff may establish municipal liability based upon a single event if he demonstrates that the person causing the constitutional injury was a final policymaker for the entity. *See City of St. Louis*, 485 U.S. at 123 ("only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"). Plaintiff has made no allegations supporting a conclusion that the City of Bakersfield had a custom of violating civil rights. Moreover, Plaintiff has not plead allegations supporting a conclusion that he suffered a violation of his constitutional rights. Thus, a Section 1983 claim against the City is not cognizable and the Court recommends the claim be **DISMISSED**.

### 4. Private individuals and Facebook as state actors

Plaintiff identifies several individuals and entities as defendants in his First Amended Complaint. However, it is unclear whether he seeks to state a claim for "infliction of cruel and unusual punishments" against these individuals. (*See* Doc. 3 at 6)

Importantly, "private parties are not generally acting under color of state law." *Price v. Hawaii*, 939 F.2d 702, 707-09 (9th Cir. 1991); *see also Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."). Consequently, the Ninth Circuit explained that "[w]hen addressing whether a private party acted under color of law, we . . . start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Medical Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). The Supreme Court identified four tests to determine whether a private individual's actions implicate state action: (1) the public function test, (2) the joint action test, (3) the state compulsion test, and (4) the governmental nexus test. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997).

#### a. Public function

The public function test inquires whether the private actor performs a public function that is "traditionally the exclusive prerogative of the state." *Parks School of Bus., Inc. v Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995). There are no factual allegations that support a conclusion that the individual defendants or Facebook had, in essence, "become the government" to satisfy the public

function test. *See Lee v. Katz*, 276 F.3d 550, 555 n.5 (9th Cir. 2002

    b.  *Joint action*

  The Supreme Court explained, "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Lugar v. Edmonson Oil Co.*, 456 U.S. 922, 941 (1982) (citation omitted). The test examines whether a state has "'so far insinuated itself into a position of interdependence with the private actor that it must be recognized as a joint participant in the challenged activity." *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 607 (9th Cir. 1989) (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961)). Plaintiff has not alleged facts demonstrating the individual defendants—or Facebook— satisfy this test.

    c.  *State compulsion*

  State action may be demonstrated where a state "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State." *Johnson*, 113 F.3d at 1119 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Plaintiff has not alleged any state laws compelled the defendants to take the actions Plaintiff alleges harmed him. Accordingly, Plaintiff's allegations are insufficient to satisfy this test.

    e.  *Governmental nexus*

  The governmental nexus test inquires whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State of itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). The Ninth Circuit has identified factors for the Court's consideration to determine whether there is a sufficiently close nexus including: "(1) the organization is mostly state institutions; (2) state officials dominate decision making of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor." *Villegas v. Gilroy Garlic Festival Assoc.*, 541 F.3d 950, 955 (9th Cir. 2008).

  Plaintiff does not include any factual allegations in his complaint addressing the factors identified by the Ninth Circuit. Consequently, the Court is unable to conclude there is a significantly

close nexus between the defendants and a state government to satisfy this test.

### f. Conclusion

Plaintiff fails to allege any facts supporting the conclusion that any of the four tests identified by the Supreme Court are satisfied, or that official state action is implicated. Accordingly, his claim under Section 1983 for a violation civil rights by private individuals and Facebook is not cognizable, and the Court recommends this claim be **DISMISSED**.

## B. Identity theft

Plaintiff asserts that "[t]he defendants and all of them obtained a copy of the plaintiffs (sic) California Drivers License, Social Security Card, Birth Certificate, and other valuable information… to take out loans in [his] name, turn on power and gas at [their] residences, open bank accounts, and filed federal and state tax returns." (Doc. 3 at 7) Thus, Plaintiff alleges each of the defendants are liable for identity theft. (*Id.*)

The Court finds the allegations that *all* defendants—including the Kern County Sheriff, the City of Bakersfield, and Facebook— took such actions to be facially implausible. *See Lamon v. Tilton*, 2009 WL 1884361 at *3 (E.D. Cal. June 30, 2009) (finding claims implausible based on "[c]ommon sense and judicial experience"). Nevertheless, it appears Plaintiff seeks to hold his family members and private individuals liable for identity theft for the actions identified. However, he does not identify any particular statutory or common law basis for the identity theft claim.

The federal identity theft statute, 18 U.S.C. § 1028, is criminal in nature and provides no private cause of action or civil remedy. *Rahmani v. Resorts Int'l Hotel Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998), *aff'd*, 182 F. 3d 909 (4th Cir. 1999); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming dismissal of claims brought under criminal provisions that "provide[d] no basis for civil remedy"); *Williams v. Technique Towing/Advanced Automotive/GB7,* 2011 U.S. Dist. LEXIS 77089, at *6 (E.D. Cal. July 12, 2012) (explaining "claims under Title 18 U.S.C. must fail because these criminal statutes do not provide a private right of action"). Thus, to the extent Plaintiff seeks to state a claim under 18 U.S.C. § 1028, his claim fails as a matter of law and the Court recommends the third cause of action be **DISMISSED**.

///

## C. Conspiracy to commit murder

Plaintiff asserts that "[t]he defendants, and all of them, on numerous occasions tried to kill the plaintiff." (Doc. 3 at 7) For example, Plaintiff asserts that at unidentified times, his food was poisoned by Zelma Jackson and deputies from the Kern County Sheriff Department. (*Id.*) Further, he asserts unidentified individuals approached his room wearing masks "also shot at the plaintiff and a close friend." (*Id.*)

As an initial matter, the Court again finds it facially implausible that *all* named defendants conspired to kill Plaintiff, such as through poisoning his food. *See, e.g., Lamon*, 2009 WL 1884361 at *3 (E.D. Cal. June 30, 2009), *report and recommendation adopted*, 2009 WL 2461309 (E.D. Cal. Aug. 11, 2009) (rejecting as facially implausible the plaintiff's claim that prison officials engaged in an elaborate and seemingly coordinated conspiracy to retaliate against the plaintiff through, among other things, poisoning him); *see also Williams v. Lopez*, 2016 WL 921550 at *2 (E.D. Cal. Mar. 11, 2016), *report and recommendation adopted*, 2016 WL 3181214 (E.D. Cal. June 7, 2016) (finding "allegations about being poisoned [by prison officials] are not plausible"). Further, there are no facts alleged to support a conclusion that the defendants engaged in a conspiracy.

Regardless, Plaintiff is unable to state a private cause of action under 18 U.S.C. § 1117, which is the federal criminal statute regarding conspiracy to commit murder. *See, e.g., Rzayeva v. United States*, 492 F. Supp. 2d 60, 84 (D. Conn. 2007) ("Insofar as the Plaintiffs do allege murder or conspiracy to commit murder, no private cause of action exists for such conduct"). Thus, Plaintiff's fourth cause of action for conspiracy to commit murder fails as a matter of law, and the Court recommends it be **DISMISSED**.

## D. False police reports

In support of his fifth claim for relief, Plaintiff alleges that at unidentified times, the Kern County Sheriff and the district attorney "have effected and allowed false evidence to be submitted in order to prosecute Plaintiff, and perjured testimony to be used to charge the plaintiff with offenses that these defendant(s) know for a fact the plaintiff would never commit." (Doc. 3 at 8)

Notably, the district attorney is not identified as a defendant in the First Amended Complaint. (*See* Doc. 3 at 1-2) Nevertheless, Plaintiff's claim regarding the fabrication of police reports and

evidence is barred under *Heck Humphrey*, 512 U.S. 477, 486 n.6 (1994). Specifically, the Supreme Court determined,

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487-88.

Significantly, "it is well established that Plaintiff's contention that the police reports were 'fabricated' would necessarily call into question the validity of Plaintiff's … conviction." *See Esparza v. Brearley,* 2010 WL 3448586 at*4 (C.D. Cal. Sept. 1, 2010) (citing, *e,g., Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) ("malicious prosecution ... and a conspiracy among Los Angeles officials to bring false charges against [plaintiff]" "would necessarily imply the invalidity of [plaintiff's] two convictions"); *Moore v. U.S.A.*, 1998 WL 700551 at *1 (9th Cir. Sep. 23, 1998) ("claims that defendants perjured themselves, ... secured perjured testimony ..., [and] fabricated testimony ... are precluded under [*Heck*] because they implicate the validity of his convictions"); *Oliver v. San Francisco Police Dep't*, 1995 WL 309539 at *1 (9th Cir. May 19, 1995) (allegations that "defendants submitted a false police report and committed perjury at his criminal trial" would "necessarily imply the invalidity of his conviction"). Accordingly, the Court finds Plaintiff's claim regarding the filing of false police reports and evidence is barred by *Heck* and recommends the fifth cause of action be **DISMISSED**.

### E. Tax and Insurance Fraud

Plaintiff alleges the defendants are liable for tax and insurance fraud as his seventh and ninth causes of action. (Doc. 3 at 9) According to Plaintiff, "[t]he defendants and all of them have filed false tax returns in the plaintiff's name and other individuals (sic) names…" (Doc. 3 at 9) In addition,

he asserts Zelma Jackson and Romien Harris, "along with other defendants, have taken out insurance policies on plaintiffs (sic) life." (*Id.*)

Again, the Court finds the claim that *all* defendants—such as Facebook or local law enforcement—have filed tax returns in Plaintiff's name or taken insurance policies in his name to be facially implausible. *See Lamon*, 2009 WL 1884361 at *3 (finding claims implausible based on "[c]ommon sense and judicial experience"). Regardless, Plaintiff has not invoked any specific federal statute providing a private right of action for such wrongs, and the Court has not located any. Indeed, federal tax law provides that "

"The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private right of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). "Instead, the statute must either explicitly create a right of action or implicitly contain one." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008). Accordingly, the Court recommends the causes of action for tax fraud and insurance fraud be **DISMISSED**.

### F. State law claims

The remaining causes of action in Plaintiff's First Amended Complaint arise under state tort and criminal laws, including intentional infliction of emotional distress, defamation, and vandalization. (*See generally* Doc. 3) Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." Significantly, the Ninth Circuit determined that "[w]hen federal claims are dismissed before trial . . . pendant state claims also should be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) (internal quotation marks omitted); *see also Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) (recognizing the propriety of dismissing supplemental state law claims without prejudice when the district court has dismissed the federal claims over which it had original jurisdiction).

At this juncture—because Plaintiff again failed to state a cognizable claim under federal law—the Court declines to expend judicial resources analyzing the merits of his state law claims. Accordingly, the Court recommends that supplemental jurisdiction be declined and Plaintiff's claims arising under state law be **DISMISSED**.

### VI. Findings and Recommendations

Based upon the facts alleged, the Court finds Plaintiff's causes of action arising under federal law either are facially implausible or fail as a matter of law. Thus, the Court lacks subject matter jurisdiction over this action and it does not appear the deficiencies can be cured by amendment and leave to amend would be futile. *See Lopez*, 203 F.3d at 1130; *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Accordingly, the Court **RECOMMENDS**:

1. Plaintiff's motion to proceed *in forma pauperis* (Doc. 4) be **DENIED**;
2. Plaintiff's First Amended Complaint be **DISMISSED** without prejudice; and
3. The Clerk of Court be **DIRECTED** to close this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **April 23, 2019**  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE